UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL POSTAL PROFESSIONAL NURSES, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 05-0648 (PLF) |
| UNITED STATES POSTAL SERVICE, | ) ) ) | |
| Defendant. | ) ) | |

OPINION

This matter is before the Court on defendants' motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment under Rule 56. Upon consideration of the motion, opposition, and reply, the Court will grant defendant's motion to dismiss.

I.  BACKGROUND

Plaintiffs are the National Postal Professional Nurses ("NPPN"), a union which represents nurses employed by the United States Postal Service ("USPS") as career postal employees, and six individual career postal nurses. Postal nurses are employed at 51 postal facilities throughout the United States. Complaint ¶ 12. Their duties include pre-employment health assessments for applicants to employment, treatment of USPS employees in need of medical care, reviewing medical reports for workers' compensation claims, administering drug

tests, and health education.  Id. ¶ 11.  They are supervised by Occupational Health Nurse Administrators ("OHNA") and/or physicians.  Id. ¶ 13.  Some of the OHNAs and postal physicians are contract employees, and not career postal employees.  Id. ¶ 16.  Career postal nurses at various facilities around the country, including ones in Maryland, Massachusetts, Texas, Ohio, and Florida, have been or are currently being supervised by contract OHNAs and physicians.  Id. ¶¶ 19-23.

According to plaintiffs, defendant's employment of non-career service supervisors has made NPPN's handling of claims, grievances, and disciplinary action "more difficult" because "the supervisory and management officials who take the actions and who hear the claims and grievances" are "not familiar" or are "less familiar" than career service supervisors with the "USPS-NPPN collective bargaining agreement, the USPS Employee Labor Relations Manual, and Postal medical and health manuals."  Complaint ¶ 40.  Plaintiffs therefore have brought suit seeking declaratory and injunctive relief in this Court, asserting that the Court has jurisdiction over its claim pursuant to 39 U.S.C. §§ 409 and 1208.  Id. ¶ 9.  They ask the Court to declare that that the employment of contract OHNAs and contract physicians violates Section 1001 of the Postal Reorganization Act of 1970 ("PRA"), 39 U.S.C. § 101 et seq., and enjoin the USPS from employing OHNAs and physicians without appointing them to career service under the PRA.  Complaint at 8-9.

II.  DISCUSSION

Defendant moves to dismiss or, in the alternative, for summary judgment arguing that (1) plaintiffs do not have standing to bring suit; (2) plaintiffs have failed to exhaust their contractual remedies under the collective bargaining agreement with the USPS prior to filing

suit; and (3) plaintiffs incorrectly rely on provisions of the PRA that do not provide an independent cause of action.

*A. Applicable Legal Standards*

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure may not be granted unless it appears beyond doubt that plaintiff can prove no set of facts that supports its claim entitling it to relief.  See Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 325 (1991); Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1117 (D.C. Cir. 2000).  In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff.  See Razzoli v. Fed. Bureau of Prisons, 230 F.3d 371, 374 (D.C. Cir. 2000); Taylor v. FDIC, 132 F.3d 753, 761 (D.C. Cir. 1997); Harris v. Ladner, 127 F.3d 1121, 1123 (D.C. Cir. 1997).  While the complaint is to be construed liberally in considering a motion to dismiss, the Court need not accept inferences drawn by plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  See National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communication Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

When addressing a motion to dismiss under Rule 12(b)(6), the Court generally may not look outside the facts contained within the four corners of the complaint, see Gordon v. National Youth Work Alliance, 675 F.2d 356, 361 (D.C. Cir. 1982), unless it treats the motion to dismiss as a motion for summary judgment.  See FED. R. CIV. P. 12(b); Currier v. Postmaster

Gen., 304 F.3d 87, 88 (D.C. Cir. 2002); 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 12.34(2) (2002 ed.).

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits or declarations, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Id. at 255; see also Washington Post Co. v. United States Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989).

In opposing a motion for summary judgment, the non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the non-movant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50. To defeat a motion for summary judgment, a plaintiff must have more than "a scintilla of evidence to support [its] claims." Freedman v. MCI Telecomm. Corp., 255 F.3d 840, 845 (D.C. Cir. 2001). The

Court cannot "weigh the evidence and determine the truth of the matter," but must "determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.

### B. Subject Matter Jurisdiction

Defendant's first argument, that plaintiffs do not have standing, is not properly the subject of a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) or a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Because defendant's challenge to plaintiffs' standing is a challenge to the Court's subject matter jurisdiction over plaintiffs' claim, the argument should have been made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. See, e.g., Worth v. Jackson, 451 F.3d 854, 855 (D.C. Cir. 2006) ("Three inter-related judicial doctrines -- standing, mootness, and ripeness -- ensure that federal courts assert jurisdiction only over 'Cases' and 'Controversies.'") (citing U.S. Const. art. III, § 2.). Standing is an Article III requirement under which the plaintiffs must show: (1) that they have suffered an injury in fact, the invasion of a legally protected interest; (2) that the injury is fairly traceable to the defendant's conduct (a causal connection); and (3) that a favorable decision on the merits likely will redress the injury. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Gettman v. DEA, 290 F.3d 430, 433 (D.C. Cir. 2002). The alleged injury in fact must be concrete and particularized and actual or imminent, not conjectural, hypothetical or speculative. See Lujan v. Defenders of Wildlife, 504 U.S. at 560-61; Sierra Club v. EPA, 292 F.3d 895, 898 (D.C. Cir. 2002); American Petroleum Institute v. EPA, 216 F.3d 50, 63 (D.C. Cir. 2000). If plaintiffs cannot meet all three prongs of this test, then the Court must dismiss the suit for lack of standing.

When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may dispose of the motion on the basis of the complaint alone or may consider certain materials beyond the pleadings. "[W]here necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Herbert v. National Academy of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992). This Court has interpreted Herbert to allow a court to "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections and Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing Herbert v. National Academy of Sciences, 974 F.2d at 197), *aff'd* Scolaro v. D.C. Bd. of Elections and Ethics, No. 00-7176, 2001 U.S. App. LEXIS 2747, at *1 (D.C. Cir. Jan. 18, 2001); see also Erby v. United States, 424 F. Supp. 2d 180, 182-83 (D.D.C. 2006).

In this case, not only has defendant failed to bring its standing argument pursuant to the proper Rule, but it has barely explained that argument, devoting all of two short paragraphs to it in its motion to dismiss. See Defendant's Memorandum in Support of Motion to Dismiss, or in the Alternative, for Summary Judgment ("Def. Mot.") at 3-4. Defendant states briefly that the plaintiffs have no personal interest in how the USPS employs OHNAs and physicians to supervise career postal nurses, and no interest in the authority that they exercise because the same authority would be exercised by supervisors who were career civil servants under the PRA. See id. Defendant does not identify which prong or prongs of the Lujan test plaintiffs have failed to meet. Plaintiffs respond with a variety of sworn declarations intended to demonstrate the "adverse effects" to them arising from the employment of contract OHNAs and physicians. See

Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment ("Pls' Opp.") at 8-11, Declaration of Idell Mitchell, Declaration of Ajo James, Declaration of Annu Rajan.

It is undisputed that this Court has original, though not exclusive, jurisdiction over "all actions brought by or against the Postal Service," a category into which this suit clearly falls. 39 U.S.C. § 409. Given the defendant's failure to engage in any further analysis of the standing requirement beyond the bald statement that the plaintiffs have no interest in this matter or to provide the Court with any additional information in support of its argument, and in view of plaintiffs' declarations to the contrary, the Court will deny defendant's motion to dismiss for lack of standing.

### C.  Plaintiffs' Claim Under the Postal Reorganization Act

1. Failure to Exhaust under the Collective Bargaining Agreement

Defendant next argues that plaintiffs have failed to exhaust their contractual remedies under the collective bargaining agreement between NPPN and the USPS, and that Section 1001 of the PRA, under which plaintiffs purport to bring their claim, does not give rise to a private right of action. Def. Mot. at 4-9. Plaintiffs maintain that it is unnecessary for them to comply with the requirements of the NPPN-USPS collective bargaining agreement's grievance-arbitration procedures because their claim is brought independent of that agreement on a separate statutory basis pursuant to 39 U.S.C. § 1001(b). Pls' Opp. at 11-23.

The Court is dubious of plaintiffs' contention that the claim they bring falls outside the scope of those matters addressed in their collective bargaining agreement. First, the

nature of the harms alleged in the complaint and described in the declarations provided in opposition to defendant's motion seem to fall within those described by the NPPN-USPS agreement. The gravamen of plaintiffs' complaint is that supervision by non-career employees has adversely affected the working conditions of career postal nurses. See Complaint ¶ 40. The declarations of various individual plaintiffs provided in support of their opposition to defendant's motion describe a variety of improper workplace incidents and actions that they claim to be the result of contract supervisors not receiving proper training in USPS rules and regulations. See, e.g., Declaration of Idell Mitchell ¶ 9 ("The work of [postal nurses] at the Southern Maryland facility has been significantly adversely affected by the USPS' use of contract OHNAs and contract Doctors"), ¶ 13 (describing incident in which contract OHNA first ordered postal nurse to perform pre-employment drug test test while off-duty, in violation of USPS drug testing procedures, and then subsequently disciplined the postal nurse for refusing to perform the invalid test); Declaration of Ajo James ¶ 4 ("The work of [postal nurses] in Dallas has been significantly adversely affected by the USPS' use of contract OHNAs and contract Doctors"), ¶ 12 (asserting that contract physician supervisor has not handled overtime, assignments, and vacation by seniority, in violation of the NPPN collective bargaining agreement); Declaration of Annu Rajan ¶ 9 (describing contract physician supervisor's requirement that postal nurses work without "out of schedule" pay in violation of collective bargaining agreement and USPS Employee Labor Relations Manual).

        Such complaints regarding non-career service supervisors would seem to fall within the definition of a "grievance" provided in the collective bargaining agreement between the NPPN and USPS:

> A grievance is defined as a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment. A grievance shall include, but is not limited to, the complaint of an employee or of the Union which involves the interpretation, application of, or compliance with the provisions of this Agreement.

Article 15, Section 15.01, Agreement between the United States Postal Service and National Postal Professional Nurses, 1999-2004 ("Agreement"). The alleged behavior or misbehavior of the contract supervisors would also seem to be irrelevant to whether their appointment violates any part of the PRA -- that is, if the PRA actually prohibits these contract employees from supervising postal nurses, it would prohibit those who were model supervisors as well as the less able ones.

Furthermore, plaintiffs' argument that this suit is not concerned with the collective bargaining agreement conflicts with the basis on which they have filed their own complaint. See Pls' Opp. at 12. In the complaint, plaintiffs' state that the Court's subject matter jurisdiction arises at least in part from 39 U.S.C. § 1208. See Complaint ¶ 9. That section of the PRA expressly grants jurisdiction to the Court over suits arising from the violations of contracts between the USPS and labor organizations. 39 U.S.C. § 1208. To bring suit under that provision, however, plaintiffs would first have to have exhausted the provisions of their collective bargaining agreement. See Roman v. United States Postal Service, 821 F.2d 382, 384 (7th Cir. 1987) (holding that exhaustion of contractual remedies is a prerequisite to claim for relief under 39 U.S.C. § 1208). Cf. Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 736 (1981) ("[C]ourts ordinarily defer to collectively bargained-dispute resolution procedures when parties' dispute arises out of the collective-bargaining process") (citations


omitted); Communications Workers of America v. American Telephone and Telegraph Co., 40 F.3d 426, 435 (D.C. Cir. 1994) ("Federal labor policy establishes a heavy presumption in favor of mandatory arbitration of disputes under collective bargaining agreements, unless the agreement expressly provides that artibration is not the exclusive remedy.") (citing United States v. Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).  The NPPN-USPS contract describes at length the internal grievance procedures and arbitration procedures that must be taken to resolve these disputes.  Agreement at Article 15.  It further provides that "[a]ll disputes relating to wages, hours, and conditions of employment shall be processed through the grievance-arbitration procedure set forth in this Article *prior to proceeding in any other forums*."  Id., Section 1501 (emphasis added).  It is undisputed that plaintiffs have not exhausted these procedures set forth in the NPPN-USPS Agreement.  See Def. Mot. at 5; Pls' Opp. at 11.

      2. Implied Rght of Action under the Postal Reorganization Act

Despite its reservations regarding plaintiffs' apparent attempt to reframe what seems to be an issue that should be handled under their collective bargaining agreement, the Court will assume for purposes of further analysis that plaintiffs' claim is brought solely to address whether the employment of contract physicians and OHNAs violates Section 1001 of the PRA.  Under such a construction, plaintiff's complaint must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted because 39 U.S.C. § 1001 does not give rise to an implied private right of action.

The key inquiry in determining whether a statute contains an implied right of action is legislative intent.  See Thompson v. Thompson, 484 U.S. 174, 179 (1988); see also

Middlesex County Sewerage Auth. v. Nat'l Sea Clammers, 453 U.S. 1, 13 (1981); Touche Ross & Co. v. Redington, 442 U.S. 560, 575 (1979); see also Nat'l Trust For Historic Preservation v. Blanck, 938 F.Supp. 908, 914-15 (D.D.C. 1996). In other words, the Court must ask "whether Congress intended to create a private right of action under a federal statute without saying so explicitly." Middlesex County Sewerage Auth. v. National Sea Clammers, 453 U.S. at 13. To do so, the Court will "look first, of course, to the statutory language, particularly to the provisions made therein for enforcement and relief," and then "review the legislative history and other traditional aids of statutory interpretation." Id.[1]

   Section 1001 of the PRA provides in general terms for the appointment and status of USPS employees, both in career and contract positions. 39 U.S.C. § 1001. Plaintiffs cite this Section as a whole, and specifically to Sections 1001(a) and (b) within the body of their

---

[1] The plaintiffs analyze this issue under the four factors set forth by the Supreme Court in Cort v. Ash, 422 U.S. 66 (1975). They are "(1) whether the plaintiff is part of 'the class for whose *especial* benefit the statute was enacted'; (2) the evidence of 'legislative intent, explicit or implicit, either to create such a remedy or to deny one'; (3) whether inferring such a right is 'consistent with the underlying purposes of the legislative scheme'; and (4) whether the cause of action is one traditionally relegated to state law." Government of Guam v. American President Lines, 28 F.3d 142, 145 (D.C. Cir. 1994) (emphasis in original) (quoting Cort v. Ash, 422 U.S. at 78).

   Later decisions of the Supreme Court have held that the Cort factors are not entitled to equal weight, and that the first three actually relate to the central inquiry, which is Congressional intent. See Touche Rosse v. Redington, 442 U.S. at 575; see also Thompson v. Thompson, 484 U.S. at 521 (Scalia, J., concurring) (arguing that Cort v. Ash analysis has been "effectively overruled" by later decisions). The third and fourth factors alone, furthermore, cannot form the basis for implying a right of action. See Touche Ross v. Redington, 442 U.S. at 580 (Brennan, J., concurring). Finally, "there is no need for [the Court] to 'trudge through all four of the factors when the dispositive question of legislative intent has been resolved.'" Merrill Lynch, Pierce, Fenner & Smith v. Curran, 456 U.S. 353, 388 (1982) (quoting California v. Sierra Club, 451 U.S. 287, 302 (1981) (Rehnquist, J., concurring)). Here, the Court has not found it necessary to go beyond the statutory language and legislative intent to address all four Cort factors.

complaint. Complaint ¶¶ 29-31, 34-36. In their opposition to defendant's motion, however, they assert that their private right of action arises solely from Section 1001(b) of the PRA. See Pls' Opp. at 16-17. That portion of Section 1001 states:

> Officers and employees of the Postal Service (other than those individuals appointed under sections 202, 204, and 1001(c) of this title) shall be in postal career service, which shall be a part of the civil service. Such appointments and promotions shall be in accordance with the procedures established by the Postal Service. The Postal Service shall establish procedures, in accordance with this title, to assure its officers and employees meaningful opportunities for promotion and career development and to assure its officers and employees full protection of their employment rights by guaranteeing them an opportunity for a fair hearing on adverse actions, with representatives of their own choosing.

39 U.S.C. § 1001(b). Plaintiffs also cite as support a House of Representatives Report noting the poor working conditions of USPS employees in 1970, at the time the PRA was passed. Pls' Opp. at 17 (quoting H.R. REP. No. 91-1104, at 3 (1970). They claim that this House Report demonstrates a Congressional intent "to protect the interests of employees and generally promote more effective labor-management relations." Id. Taking the part of Section 1001(b) stating that "officers and employees of the Postal Service . . . shall be in the postal career service, which shall be a part of the civil service" in conjunction with the further statement in Section 1001(c) that the USPS may hire contract employees for certain positions, plaintiffs argue that the Court therefore can infer that Congress intended a private right of action to enforce Section 1001(b) and to prevent the employment of contract physicians and OHNAs by the USPS. See id. at 17-18.

        The Court does not find plaintiffs' analysis of the PRA persuasive. Section 1001(b) by its terms does not set forth any explicit prohibition on the hiring of contract employees, much less create a cause of action for enforcing such a prohibition. Read as a whole,

Section 1001 provides a number of general prescriptions setting forth a personnel scheme, but containing no provisions for enforcement or relief. 39 U.S.C. § 1001. Included in that Section is the right of the USPS, consistent with applicable laws, regulations, and collective bargaining agreements, "to direct officers and employees of the Postal Service in the performance of official duties," "to hire, promote, transfer, assign, and retain officers and employees in positions within the Postal Service," "to maintain the efficiency of the operations entrusted to it," and "to determine the methods, means, and personnel by which such operations are to be conducted." 39 U.S.C. § 1001(e). Even if plaintiffs were correct that a private right of action could be implied in this Section, its language would seem to grant the USPS a wide latitude in its employment practices not inconsistent with the employment of contract employees in various positions.

Upon examination of the statutory language and the legislative history cited by the plaintiffs, this Court agrees with other courts that have found that "the general prescriptive character of § 1001(b), which merely directs the Postal Service to establish personnel management procedures" does not indicate a Congressional intent to create a private remedy. Blaze v. Payne, 819 F.2d 128, 129-30 (5th Cir. 1987) (citing Gaj v. United States Postal Service, 800 F.2d 64 (3d Cir. 1986)); accord Blair v. United States Postal Service, 657 F.Supp. 524 (S.D. Tex. 1987). See also Harper v. Frank, 985 F.2d 285 (6th Cir. 1993). Furthermore, as the Fifth Circuit has noted, implying such a private right of action is particularly unwarranted in light of the extensive and comprehensive labor scheme laid out in other sections of the PRA. See Blaze v. Payne, 819 F.2d at 130. Those sections provide multiple avenues and express rights by which USPS employees may pursue employment remedies, including the right to bargain collectively and pursue claims in federal courts for breach of those collective bargaining agreements. See 39

U.S.C. §§ 1202-1206, 1208. Such provisions supply further evidence that Congress did not intend the general prescriptions of Section 1001 to form an additional avenue for employee remedy. The Court therefore cannot and will not imply a private right of action under 39 U.S.C. § 1001(b).

### III.   CONCLUSION

For the foregoing reasons, the Court will grant defendant's motion to dismiss for failure to state a claim. A separate Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   November 8, 2006